Roosevelt **MILLER** and Katherine Mae Joseph aka Katherine Jones Joseph, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 21396.

United States Court of Appeals Ninth Circuit.

Aug. 30, 1967.

Rehearing Denied Oct. 25, 1967.

■■■■■■■■■■■■■■■■■■■■■■■■■■■

Raymond E. Sutton, Las Vegas, Nev., for appellants.

Edward E. Davis, U. S. Atty., JoAnn D. Diamos, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and MATHES,* Senior District Judge.

HAMLEY, Circuit Judge.

Roosevelt Miller and Katherine Mae Joseph were charged in a single count indictment with wilfully and knowingly conspiring with Mario Cardenas-Vega and others to import, receive, conceal, or to facilitate the transportation of or the concealment of, heroin in violation of the Narcotic Drugs Import and Export Act, 35 Stat. 614 (1909), as amended, 21 U.S.C. §§ 173–74 (1964). At the close of the Government's case in chief, and again at the close of all the evidence, defendants moved for a judgment of acquittal, claiming that the evidence was insufficient to show that either engaged in the alleged conspiracy. The trial court denied both motions and the jury found both defendants guilty. This joint appeal followed.

As their sole specification of error, defendants challenge the sufficiency of the evidence to show an unlawful conspiracy. In considering this argument we must view the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to sustain the Government. Moody v. United States, 9 Cir., 376 F.2d 525, 527. Once the facts are ascertained, the test is whether "reasonable minds could find that the evidence excludes every hypothesis but that of guilt." Lee v. United States, 9 Cir., 376 F.2d 98, 101.

On January 14, 1966, two Customs Port Investigators stationed at Nogales, Arizona, noticed a 1957 Pontiac parked in front of the home of Arturo Pastel, a known narcotics dealer. The house was located in Mexico, some five miles south of Nogales on the Cananea Highway. It was later learned that the Pontiac was registered to defendant Miller. About a week later Miller was seen crossing the border on foot from Mexico to the United States. He stated to customs officials that he was trying to obtain work as a musician in Tucson.

Miller was not seen again until the critical day in question, February 10, 1966. Shortly after five o'clock in the evening a 1965 Mustang was observed traveling south into Mexico. Its two occupants were later identified as defendants Miller and Mrs. Joseph. The car was registered in Mrs. Joseph's name, but Miller was driving.

Later the same evening the 1957 Pontiac which had previously been observed at Arturo Pastel's house crossed the border into the United States at Nogales. The car was driven by Mario Cardenas-Vega, an alleged co-conspirator and cousin of Arturo Pastel. The car was not searched.

---

* Senior District Judge William C. Mathes died on July 24, 1967. Before his death he had expressed his concurrence in the result which is reached.

Shortly thereafter the Mustang containing defendants Miller and Joseph entered the Nogales port of entry from Mexico. Customs officials searched that car and Miller but found nothing. The defendants told customs officials that they went to Nogales, Sonora, Mexico for dinner.

The Mustang was kept under surveillance as it proceeded north on the Tucson highway. About one-half mile from the border the car stopped for gas; a few miles farther it pulled off to the side of the road; and it was later observed parked in front of a motel for ten or fifteen minutes. The surveillance team did not see the defendants talking to any other persons or engaging in any suspicious activities while the car was parked.

Sometime later the Pontiac driven by Cardenas-Vega was stopped along the highway by state patrolmen for a traffic infraction. Customs officials were notified and the car was impounded and searched. Heroin was found in the heater vent under the front seat. A slip of paper containing the license number of Mrs. Joseph's Mustang was found in Cardenas-Vega's pocket.

At the trial Cardenas-Vega was granted immunity from prosecution. He testified that he had seen defendant Miller at Arturo Pastel's house some fifteen days before February 10, at which time Miller apparently left the Pontiac with Pastel. On February 10 Cardenas-Vega saw defendants Miller and Joseph at Pastel's. On neither occasion did Cardenas-Vega meet or talk to defendants, nor did he see them talking with Pastel.

Cardenas-Vega further testified that on February 10 he was asked by Pastel to deliver heroin across the border to Miller, using Miller's Pontiac to make the delivery. Cardenas-Vega wrote down the license number of Mrs. Joseph's Mustang, intending to meet the car along the highway to Tucson. The traffic arrest prevented completion of the delivery.

Mrs. Joseph testified in her own behalf. She stated she met Miller at his sister's house in Los Angeles and Miller asked her for a ride to Tucson, "to see his attorney about a court date." Arriving early in the evening on February 10, they drove to Nogales, Sonora, Mexico for dinner. Mrs. Joseph further testified that on the way back to Tucson they stopped only three times, once at the port of entry, once at a gas station, and again at a motel for coffee. Mrs. Joseph denied knowledge of the 1957 Pontiac, denied going to the house of Arturo Pastel, and denied pulling off the side of the road.[1]

A conspiracy is a combination or agreement to violate the law, in this case an alleged scheme by two or more persons to import, receive, conceal, or facilitate the importation, transportation or concealment of narcotic drugs. Since a conspiracy by its very nature is a clandestine offense, proof of the agreement must ordinarily rest upon inference drawn from competent circumstantial evidence. Diaz-Rosendo v. United States, 9 Cir., 357 F.2d 124, 129. The use of circumstantial evidence to support a conviction does not, however, relieve the prosecution from showing "some knowledge, explicit or implied, in each defendant of the principal purpose of the conspiracy, and some act or action indicating participation therein." Chavez v. United States, 9 Cir., 275 F.2d 813, 817 (emphasis in original).

Applying these general principles to the case at hand, we hold the evidence sufficient to establish a conspiracy between Miller, Cardenas-Vega and others. Miller was twice seen at the home of a known narcotics dealer. Miller's Pontiac was used to transport the illegal goods across the border. A co-conspirator testified that delivery was to be made to Miller along the highway.

1. Since the Government's evidence indicated that Mrs. Joseph was at Pastel's house and that the Mustang did pull off the side of the road somewhere between the gas station and the motel, we must accept the Government's version as true.

A jury could readily infer that the evidence excludes every hypothesis but that Miller wilfully and knowingly conspired with others to import heroin. See Parente v. United States, 9 Cir., 249 F.2d 752.

■ As to defendant Joseph, the evidence, viewed in the light most favorable to sustain the conviction, establishes that she accompanied Miller in her car to Nogales, Sonora, Mexico on February 10. On the same day she was seen with Miller at the home of Arturo Pastel, "a known narcotics dealer." Delivery of the narcotics was to be made to Miller in her car. She was an occupant in the car when it was observed making several stops along the highway. We hold that this evidence alone was insufficient as a matter of law to establish Mrs. Joseph's participation in the conspiracy.

■ In order to establish a person as a participant in a conspiracy, the evidence must show that the accused intended to join and cooperate in the illegal venture. Knowledge that a conspiracy exists is a minimum requirement for establishing the requisite intent. "Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal." Direct Sales Co. v. United States, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674. See Daily v. United States, 9 Cir., 282 F.2d 818, 821–822. Association with an alleged co-conspirator may raise a strong suspicion of knowledge and intent, but this is not the only reasonable inference which may be drawn from such conduct. Evans v. United States, 9 Cir., 257 F.2d 121, 126; Ong Way Jong v. United States, 9 Cir., 245 F.2d 392, 394.

■ The Government argues that the act of Mrs. Joseph in going to the home of a "known narcotics dealer" is an act from which knowledge could be inferred. However, this was Mrs. Joseph's first trip to Nogales. No evidence was introduced to show that *she* was aware of the reputation of the house. Whether she was aware of Miller's purpose in visiting the house or participated or overheard any conversations while inside is a matter of surmise and speculation. Cf. Diaz-Rosendo v. United States, 9 Cir., 364 F.2d 941, 944.[2]

■ The same reasoning applies to the use of Mrs. Joseph's automobile as the "target" vehicle in making the delivery and the several stops made by the defendants along the highway. There was no evidence that Mrs. Joseph was aware of the fact that Miller was using her vehicle to make the delivery. Insofar as the evidence indicates, the stops along the highway were innocent acts. They were not acts which unequivocally pointed to Mrs. Joseph's knowledge of a conspiracy.

■ Out of all the evidence linking Mrs. Joseph to the conspiracy, two valid inferences are possible: (1) that Mrs. Joseph knowingly and intentionally participated in the plan of Miller, Cardenas-Vega and others to illegally import heroin, or (2) that Mrs. Joseph, totally unaware of her companion's activities, merely went along for the ride. Cf. Lee v. United States, 9 Cir., 376 F.2d 98, 102. Where both inferences are equally valid, the defendant is entitled to the one which favors her. Chavez v. United States, supra; Carter v. United States, 102 U.S. App.D.C. 227, 252 F.2d 608, 612. It follows that with regard to Mrs. Joseph, the prosecution failed to prove facts which, if believed, would show guilt beyond a reasonable doubt. The motion for acquittal as to defendant Joseph should have been granted.

Affirmed as to Miller. Reversed and remanded as to Mrs. Joseph, with directions to enter a judgment of acquittal as to her.

---

2. The Government argues that defendant Joseph's false denial of going to the narcotic dealer's home was a false exculpatory statement and was circumstantial evidence of guilt. See Young v. United States, 9 Cir., 358 F.2d 429, 431. However, since mere presence at the narcotic dealer's home was not shown to be an inculpatory act, the false denial was not exculpatory in character.