**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ricardo HERNANDEZ–CARRERAS,**
**Defendant-Appellant.**

**No. 71–2050.**

United States Court of Appeals,
Ninth Circuit.

Nov. 29, 1971.

Joseph H. Soble, Tucson, Ariz., for defendant-appellant.

Stanley L. Patchell, Asst. U. S. Atty., Richard K. Burke, U. S. Atty., James M. Wilkes, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before HAMLEY, DUNIWAY and TRASK, Circuit Judges.

DUNIWAY, Circuit Judge:

Hernandez was convicted of conspiring with persons unknown to violate sections 173 and 174 of Title 21, U.S.C. Count one charged that it was part of the conspiracy that Hernandez would "receive, conceal, buy, sell and facilitate the transportation, concealment and sale of approximately five (5) kilos of cocaine" after the cocaine would be imported into this country with Hernandez's knowledge. Count Two is identical, except that it refers to five kilos of heroin. On each count, Hernandez was sentenced to ten years imprisonment. We reverse as to these counts.

Hernandez was also convicted on two counts charging sale, dispensing or distributing of three grains of heroin and of ten grains of cocaine in violation of 26 U.S.C. § 4704(a). He was sentenced to five years on these counts. He does not assign error as to these convictions.

The conspiracy counts rest entirely on the testimony of one Merkle, a government informer.[1] He was instructed by a

---

1. Government informants, according to their testimony, are remarkably public spirited individuals. Thus, Merkle testified that he worked for customs for some seven months, entirely without pay "in order to get a hold of some of these people who are dealing in narcotics." He had no other reason to work for customs. He got money for hotel rooms or travelling expenses. There were times

**1316**

customs agent to try to buy narcotics from Hernandez. He went from his home in El Centro, California to Nogales, Arizona, and called on Hernandez. He told Hernandez he wanted heroin and asked the price per ounce. Hernandez said that he dealt only in kilos; that he could get ten kilos; that the price was $35,000 per kilo; that he could also get cocaine, and that "they charged" $40,000 per kilo. Merkle said he would have to notify his boss, and would return.

Next day, Merkle did return, and said he wanted samples. Hernandez said he would get samples from Nogales, Sonora, that night; that he would go there to get them. Later, Merkle returned and was told by Hernandez that he did not have the samples, "as his friend had gone down to Santa Ana, Sonora, and he would be back * * * the following day." When Merkle again returned, Hernandez gave him the samples. (They are the subjects of counts III and IV). Merkle paid nothing for the samples. Merkle said that he would take them to his bosses "where it would be analyzed to see if it was good quality material; " if his bosses gave him the go ahead to buy, and if Hernandez "could obtain ten kilos [5 heroin, 5 cocaine] for me which he said was fine and dandy," it would take a couple of days to check it out.

On his next visit, Merkle said that the cocaine had been cut. Hernandez said he was sorry, "that the sample was obtained from his source's wife and that is all she would give him, that as of that date his friend had not come back from Santa Ana, Sonora." They then discussed a rendezvous for delivery of the drugs, and after some exchange of threats, in which Hernandez said that "if anything happened to him, his friends would kill [Merkle]," they part-ed. There were two subsequent phone conversations. Then Merkle got a threatening phone call from someone he could not identify, and the matter ended.

The government has the good grace not to claim that the conspiracy was between Hernandez and Merkle. What it claims is that the jury could find, beyond a reasonable doubt, that Hernandez was conspiring with someone unknown to obtain the drugs for Merkle. Such a finding would have to rest entirely on Merkle's statements that Hernandez said that "they" charged $40,000 for a kilo of cocaine, that he would get samples in Nogales, Sonora, that he failed to get them because his friend had gone to Santa Ana, that the samples had been obtained from his source's wife, and that his friend had not come back from Santa Ana.

This is just too thin. It amounts to saying that if A asks B to sell contraband, and B says he will get it from C, B can be convicted of conspiring with C to sell to A. That does not follow. C may know that B intends to resell, or he may not. Even if he does, that alone does not make him party to a conspiracy to sell to A. In substance, Hernandez has been convicted for talking bigger than his performance. Over and over we hear cases in which B says he has a "source" from whom he got drugs that he sells to A. If this conviction should stand, it would be precedent for charging B, in each such case, both with the sale and with conspiring with his source to buy and resell. We decline to hand the government such power in cases where the conviction rests on nothing but what the buyer says the seller said. To paraphrase Judge Learned Hand in United States v. Reina, 2 Cir., 1957, 242 F.2d 302, 306:

"[Hernandez's] own declaration was of course competent against him, but

when he had to get out to work in order to make some money to eat.

However, he had been indicted for selling narcotics some seven years before. That charge had never been dismissed, and was set for trial 10 days after he testified. He was promised no leniency. But he did "kind of hope" that his as-sisting the government would assist in the outcome of his case, and "wish they would give [him] a little leniency." He did not feel, however, that the better job he did, the better chances of leniency. The record does not reveal what kind of leniency he got for the job he did.

it was altogether equivocal as to the source of his supply."

We think that the most that can be said for the government's case is that it indicates that Hernandez knew someone from whom he could get narcotics in Mexico. It does not even show that Hernandez ever discussed this transaction with his source, but only that he got samples from the source's wife. It tells us nothing else about what agreement, if any, Hernandez had, either with the "source" or the wife. That is not enough to prove the conspiracy charge, which we have quoted at the beginning of this opinion.

We are cited to no case that goes as far as we would have to go to uphold this conviction. The principles applied in Miller v. United States, 9 Cir., 1967, 382 F.2d 583, 587, and Chavez v. United States, 9 Cir., 1960, 275 F.2d 813, 817, require reversal here. See also United States v. Koch, 2 Cir., 1940, 113 F.2d 982, 983, which is closely in point.

The judgment of conviction under counts I and II is reversed, with directions to dismiss those counts. The judgment of conviction under counts III and IV is affirmed.