**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Randolph BOSLEY, Defendant-Appellant.**

**No. 79–1230.**

United States Court of Appeals,
Ninth Circuit.

April 2, 1980.

Murray B. Guterson, Culp, Dwyer, Guterson & Grader, Seattle, Wash., for defendant-appellant.

Francis J. Diskin, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before PECK\*, WALLACE and HUG, Circuit Judges.

HUG, Circuit Judge:

Randolph Bosley appeals his conviction for distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. He challenges the district court's admission for impeachment purposes of extrinsic evidence of a specific act. We find that the admission of the evidence was prejudicial error; therefore, we reverse.

I

Bosley, Cameron Wakefield, Steven Rolph, and John Paul Jones were all indicted on the charges of distribution of cocaine and conspiracy to commit that crime. Before trial, the charges against Wakefield were dismissed, and Rolph agreed to plead guilty and testify as a Government witness. Bosley and Jones were tried by jury on the charges.

\* The Honorable John W. Peck, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

The Government's case rested largely upon the testimony of Rolph and one Reginald Thomas, a Government informant. Thomas testified that Bosley and Jones had arranged for Thomas to purchase an ounce of cocaine from Rolph. Thomas further testified that the sale took place in Rolph's apartment and that Bosley played an active role in the transaction. Rolph generally corroborated Thomas's testimony with respect to the sale of cocaine at Rolph's apartment, but he was unable to recall the extent to which Bosley participated in the sale.

Bosley took the stand and testified that, although he visited Rolph's apartment with Jones and Thomas, he was not involved in the sale of drugs. On cross-examination, the Government asked an involved series of questions, which were objected to and rephrased and which finally resulted in the following questions and answers by Bosley:

Q Have you ever delivered cocaine during the course of this conspiracy that you acquired from Steven Douglas Rolph?

A Have I ever—well, first of all, I delivered no cocaine.

Q Never delivered any cocaine?

A No cocaine.

Q To anybody?

A No, sir.

The Government subsequently questioned Bosley whether he had ever delivered cocaine to one Hezekiah Rhodes. Bosley denied having delivered anything to Rhodes.[1] On rebuttal, the Government offered the testimony of Hezekiah Rhodes. Over Bosley's objection, the court allowed Rhodes to testify that Bosley had delivered cocaine to Rhodes on one occasion. The court denied Bosley's motion for a mistrial but instructed the jury to consider Rhodes's testimony solely for the purpose of evaluating Bosley's credibility.

## II

Fed.R.Evid. 608(b) provides that specific instances of conduct of a witness not resulting in a criminal conviction may not be proved by extrinsic evidence solely for the purpose of attacking the credibility of the witness. Applying the express provisions of Rule 608(b) to the facts of this case, the district court erred in admitting Rhodes's testimony. Upon Bosley's denial that he had delivered cocaine to Rhodes or anyone else, the Government could attempt on further cross examination to elicit a response from Bosley contradicting his prior

---

1. The relevant portion of the cross examination follows:

Q Is it your testimony that you've never obtained cocaine from Steven Douglas Rolph?

A That's true.

Q Obtained cocaine from other sources?

MR. GUTERSON: I would object, Your Honor, unless there's something to do with this case—

THE COURT: Are you going to tie it up—

MR. DISKIN: Let me rephrase the question.

THE COURT: —or are you just throwing that out into the wind?

MR. DISKIN: Let me rephrase the question, Your Honor.

Q (By Mr. Diskin) Have you ever distributed cocaine during the period of the conspiracy—

MR. GUTERSON: Again, the same objection, unless there's some—

THE COURT: Let him finish the question, Mr. Guterson. I assume there was more to the question.

Q (By Mr. Diskin) Have you delivered cocaine during the course of this conspiracy to individuals in Seattle, Washington?

MR. GUTERSON: Same objection.

THE COURT: Involved in this case? You're talking about this case only?

Q (By Mr. Diskin) Have you ever delivered cocaine during the course of this conspiracy that you acquired from Steven Douglas Rolph?

A Have I ever—well, first of all, I delivered no cocaine.

Q Never delivered any cocaine?

A No cocaine.

Q To anybody?

A No, sir.

Q Okay. Do you know Hezekiah Rhodes?

MR. GUTERSON: I'm going to object, Your Honor. I think this has nothing to do with it.

THE COURT: He just got through saying voluntarily, Mr. Guterson, that he has never, ever delivered cocaine to anybody.

MR. GUTERSON: Right.

THE COURT: Then I think Mr. Diskin can test him on that point since he volunteered it.

. . . . .

Q (By Mr. Diskin) Did you ever deliver cocaine to Hezekiah Rhodes?

A No, sir, nothing like that.

Q Did you ever deliver a quarter ounce of cocaine to Hezekiah Rhodes?

A I never delivered anything to him, period, in life.

testimony, but it could not properly impeach Bosley through extrinsic evidence of Bosley's delivery of cocaine to Rhodes. *See, e. g., United States v. Wood*, 550 F.2d 435, 441 (9th Cir. 1976).

The Government, however, urges this court to read into Rule 608(b) an exception that would permit extrinsic impeachment of a witness who has volunteered misleading information on direct examination or as an unelicited statement on cross-examination. The Government asserts that Bosley's response on cross examination, "I delivered no cocaine," went beyond the scope of the question asked and constituted an unelicited representation that Bosley had never delivered cocaine from any source to anyone, thereby inviting rebuttal. We need not decide whether there exists such an exception to Rule 608(b), because we cannot agree with the Government's characterization of Bosley's response. The response "I delivered no cocaine," in light of the question asked, is most reasonably interpreted as a statement that he had delivered no cocaine during the course of this conspiracy. It is important to note that Bosley did not state at this point that he had never delivered any cocaine to anybody. This representation occurred only after the two specific questions:

Q   Never delivered any cocaine?
   A   No cocaine.

Q   To anybody?
   A   No sir.

This response also could well be interpreted to relate back to the initial question and mean only that he never delivered cocaine to anybody during the course of this conspiracy. However, even if these last two answers are interpreted as a representation by Bosley that he had never delivered any cocaine to anybody at any time, whether in the course of this conspiracy or not, we cannot say that this was unelicited testimony by Bosley on cross-examination because it was in response to specific questions. We are thus confined to Bosley's response "I delivered no cocaine." We conclude that the response must be interpreted as being limited to the parameters of the question posed by the Government. Bosley's failure simply to answer "no" is most reasonably attributed to a desire on his part to clarify his response in the face of a series of confusing questions to which several objections had been sustained. The admission of Rhodes's testimony for impeachment purposes was error.[2]

■   The Government argues that use of Rhodes's testimony for impeachment purposes was permissible because that testimony was independently admissible as substantive proof of Bosley's association with the charged conspiracy. The district court

2.  During a dispute about the propriety of certain cross-examination of Bosley concerning this issue, the district court stated that Bosley "just got through saying voluntarily . . . that he has never, ever delivered cocaine to anybody" (*see* n.1). It is not clear whether that remark by the court was intended to be a specific finding that Bosley had made an *unelicited* statement to that effect. Assuming that the court intended to make such a finding, the finding constitutes an abuse of discretion.

The only statement of Bosley's that could be considered "unelicited" in the sense of going beyond the scope of the question asked on cross-examination, was embodied in the following question and answer:
Q   Have you ever delivered cocaine during the course of this conspiracy that you acquired from Steven Douglas Rolph?
   A   Have I ever—well, first of all, I delivered no cocaine.
However, at this point, Bosley's statement "I delivered no cocaine" cannot reasonably be

considered as a statement "that he has never, ever, delivered cocaine to anybody." The question was clearly limited to cocaine delivered *during the course of the conspiracy.* There was nothing in Bosley's response that went beyond a denial that he delivered no cocaine during the course of the conspiracy. It was only when Bosley was asked the two succeeding specific questions by the Government that the answers given could be interpreted as a statement "that he has never, ever, delivered cocaine to anybody."

The questions and answers were:
Q   Never delivered any cocaine?
   A   No cocaine.
Q   To anybody?
   A   No, sir.
The answers to these specific questions were clearly elicited on cross-examination, rather than volunteered. A finding to the contrary cannot be supported.

correctly ruled, however, that Rhodes's testimony was not admissible as evidence of association with the conspiracy; the Government failed to establish any link between the delivery to Rhodes and the particular conspiracy charged in the indictment.

The Government also contends that Rhodes's testimony was independently admissible as substantive proof of motive, knowledge, or intent under Fed.R.Evid. 404(b). Evidence may not be admitted under Rule 404(b) unless it satisfies a three-part test that includes the balancing of the probative value of the evidence against its prejudicial effect. *See United States v. Bronco*, 597 F.2d 1300, 1302–03, 1325 (9th Cir. 1979); *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977). The trial court refused to admit the testimony as substantive evidence; rather, Rhodes's testimony was admitted only for impeachment purposes, and the jury was so instructed. The balancing of prejudice and probative value is a matter of discretion for the trial court. The court's refusal to admit the testimony for substantive purposes was a reasonable exercise of discretion, and the application of Rule 404(b) may not now form the basis for affirmance on appeal.

The improper admission of Rhodes's testimony is not harmless error. The evidence was highly damaging to Bosley's credibility as a witness, a critical factor in the trial. Moreover, in light of the similarity of the transaction between Bosley and Rhodes with the acts charged in the indictment, there is danger that the jury may have considered Rhodes's testimony as substantive evidence of Bosley's participation in the conspiracy, notwithstanding the court's instruction to the contrary. Accordingly, the conviction must be reversed and Bosley afforded a new trial.

REVERSED.

WALLACE, Circuit Judge, concurring:

Although I concur, I conclude that the majority improperly rejects the district court's finding that Bosley "volunteered" his exculpatory statement on cross-examination. The proper test to be applied, as indicated by the majority, is whether the district judge abused his discretion. I conclude there was no abuse. Even after several readings of the relevant passage, *see ante* at 1276 n.1, I cannot agree, that the district judge's finding had no reasonable basis in the record. The question whether Bosley's statement, "I delivered no cocaine," went beyond the scope of the government's question seems a close one. However, unless a reading of the record clearly reveals that the admission of the government's rebuttal evidence was an abuse of discretion, I think we must defer to the judgment of the district judge as to whether Bosley's statement was volunteered. We must always remember, I suggest, that it was the district judge who had the opportunity to observe the exchange between Bosley and the prosecutor, and to hear the possibly crucial pauses and vocal emphasis.

On the basis of his ruling that Bosley volunteered his statement, the district judge admitted Rhodes' rebuttal testimony, despite the apparent proscription in Fed.R. Evid. 608(b) against using extrinsic evidence of prior instances of conduct to attack a witness' credibility. Because I would uphold the finding that Bosley's statement was volunteered, I believe we should have confronted the difficult question whether Rule 608(b) permits use of extrinsic testimony to rebut a witness' volunteered exculpatory statement on cross-examination. *Cf. United States v. Batts*, 558 F.2d 513 (9th Cir. 1977), *withdrawn and modified*, 573 F.2d 599 (9th Cir. 1978); *White v. United States*, 317 F.2d 231 (9th Cir. 1963).