**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stephen FEDERICO,
Defendant-Appellant.**

**No. 79–1684.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1980.

Decided Oct. 13, 1981.

As Amended Oct. 21, 1981.

Rehearing and Rehearing En Banc
Denied Dec. 2, 1982.

---

Victor Kenton, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Stephen Kramer, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before GOODWIN and ALARCON, Circuit Judges, and THOMPSON,* District Judge.

GOODWIN, Circuit Judge.

Federico appeals his conviction of conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846; possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). He challenges the sufficiency of the evidence to support his conviction on all three counts and asserts that certain evidence was erroneously admitted.

A. *Facts.*

Wayne Gilbert, a DEA informant, and John Miller conversed by telephone on August 1, August 6, and August 7, 1979. Their conversations were taped with Gilbert's consent. Miller discussed obtaining

---

* The Honorable Gordon Thompson, Jr., United States District Judge for the Southern District of California, sitting by designation.

cocaine to sell to Gilbert[1] and arranged to deliver it to Gilbert at Los Angeles International Airport on August 8.

Gilbert flew to Los Angeles as planned. There he met with DEA agents to coordinate surveillance of the drug transaction. Agent Cintron, posing as Gilbert's friend, waited with him at the airport until Miller arrived. When Miller did arrive, he viewed $33,000 in cash, which had been placed in an airport locker, to verify that Gilbert had the money for the cocaine. Miller stated he did not have the cocaine with him but would obtain the cocaine from his supplier and return to the airport for the money.[2] Cintron remained at the airport. Miller drove Gilbert in his white and green van to his nearby motel room. Agent Greene, who was in charge of the surveillance team, followed Miller and Gilbert. Agent Acuna followed in a separate vehicle.

Miller dropped Gilbert off in the parking area of the motel and proceeded to a Bank of America parking lot. He parked next to a brown Pontiac. Appellant Federico was in the driver's seat of the Pontiac, and a woman was in the passenger's seat.

Agent Acuna saw Miller leave his van carrying a briefcase and approach the passenger side of the Pontiac. After a brief conversation with the occupants of the car, Miller returned to his van. Both Miller and Federico then left the parking lot, Federico's Pontiac leading. Miller and Federico drove to an area near an airfreight terminal two blocks away. They parked near each other. Agents Greene and Acuna followed the vehicles and maintained separate surveillance.

Agent Acuna saw Federico get out of his car "holding a flowery shirt in his hand.... holding it in front of him with his forearm more or less level or parallel to the ground." Acuna saw Federico approach

the van, but then lost sight of Federico and Miller for a minute or two. Acuna parked across the street. From this position Acuna saw Miller and Federico conversing for a few minutes before getting into their respective vehicles.

Agent Greene saw Miller and Federico leave their vehicles and meet at an area between the van and the terminal building. Greene testified at the subsequent trial that "[i]t was very difficult to see what, if anything, was happening between the two individuals, except they were talking." Greene then lost sight of the pair while he drove around the building and parked. After regaining sight of them, Greene saw Miller and Federico separate and get back into their vehicles.

Miller followed Federico out of the terminal area to the motel. Miller pulled his van into the parking lot and parked. Federico pulled in on the other side of the motel and made a U-turn without stopping. Greene and two other agents followed Federico. Acuna continued to watch Miller and the van.

After Federico dropped off his female passenger at an apartment building some distance away, he drove to a service station. Meanwhile, Miller met Gilbert at a room at the motel. He handed Gilbert a bag of cocaine. Gilbert tested the drug. The two then returned to the airport. Gilbert gave the bag to Agent Cintron. After testing the contents and handing the bag back to Gilbert, Cintron accompanied Miller to the locker. When she opened the locker, a prearranged signal, Miller was arrested by other surveilling agents.

Agent Greene was notified that Miller had delivered cocaine and had been arrested at the airport. About 30 minutes had elapsed from the time Federico had been followed from the area of the motel room.

---

1. Gilbert testified that "He [Miller] had problems putting the deal together, and this is what we were just, you know, waiting for everything to come to a head. He was ready and I was ready."

2. Gilbert testified that Miller said he "would have to go get it [the cocaine]" and "mentioned

that he was to meet...." [This statement was cut off by defense counsel's objection.] Asked if Miller said where he was going to get it, Gilbert responded: "No, he did not." Agent Cintron testified that Miller actually said "that he was going to meet his supplier."

Greene and other agents approached Federico and asked for his identification. Federico consented to a search of his car for his driver's license. The agents found the license inside a notebook. The notebook contained Miller's name, address and phone number, and notations that may have been drug-related terms. A pair of binoculars was in plain view inside Federico's car. The agents seized the notebook and binoculars and placed Federico under arrest.

Federico and Miller were indicted on three counts. One count charged Federico and Miller with conspiracy to possess with intent to distribute the 440 grams of cocaine delivered to Gilbert. The indictment alleged that Federico had participated with Miller in organizing and putting into operation the scheme to distribute the cocaine. The indictment further alleged that Federico had delivered the cocaine to Miller to be given to Gilbert. The substantive counts were based on the acts described.

The joint jury trial of Miller and Federico produced evidence consisting of the testimony of Gilbert; testimony by DEA agents Greene, Cintron and Acuna; the taped conversations between Miller and Gilbert; the notebook and binoculars found in Federico's car; and expert testimony on the drug-related meaning of the entries in the notebook.

The testimony supported the factual narration given above. No direct evidence linked Federico to the plan to procure the cocaine and distribute it to Gilbert.[3] The content of the conversations between Miller and Federico on the date of the drug transaction remained unknown. However, from the time Miller left Gilbert at the motel to the time he returned some 30 minutes later with the contraband, Miller was seen with no person other than Federico and his companion in the Pontiac.

The expert witness testified that certain abbreviated terms in Federico's notebook were commonly-used references to amounts of drugs—"gram," "bag," and "piece"—but that there was no apparent correlation between notations containing those terms, construed as amounts of drugs, and numerical figures, construed as sums of money, contained in the notebook. Although Miller's name and phone number were listed in Federico's book, the expert testified to no relationship between notations in the notebook and the drug transaction between Miller and Gilbert. There was evidence that binoculars can be used in counter-surveillance, but there was no evidence that Federico had employed them for that purpose.

■ The court denied Federico's motion for judgment of acquittal made during the trial. The jury found Federico and Miller guilty on all three counts. The court sentenced Federico to concurrent five-year terms of imprisonment on Counts I and II with consecutive special parole terms of ten years on each.[4] The sentence on Count III, the distribution charge, was suspended and Federico was placed on probation for five years to run consecutive with the sentences on the first two counts.

B. *Evidentiary Rulings.*

■ Federico challenges the receipt in evidence of the notebook and the binoculars. The notebook was seized during a lawful arrest and was properly received in evidence. The binoculars likewise were lawfully seized.

---

**3.** There was no reference to Federico in the taped conversations between Miller and Gilbert. Gilbert testified that he had had no contact with Federico whatsoever. He also stated that "the whole deal took place in a period of about, less than 10 days." He testified that "you know, the deal was so tentative in the beginning. He [Miller] would call and say, 'yes, I have it.' And I would call back and he would say, 'no, I don't.' "

During the first taped conversation, Miller said "I'm trying to find my people, and I can't find anybody." Miller did refer to his supplier in preliminary negotiations with Gilbert, at one time referring to the fact that "my guy doesn't know me at all." At the airport he also stated that he had to pick up the cocaine from his supplier before delivering it to Gilbert. *See* note 2, *supra.*

**4.** The special parole term on the conspiracy charged under 21 U.S.C. § 846 is invalid under *Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). *United States v. Rush,* 622 F.2d 1021 (9th Cir. 1980).

■ These items met Fed.R.Evid. 401's threshold relevancy requirement. The existence of paraphernalia used in drug transactions makes Federico's conspiracy to distribute drugs more probable than it had been before admission of this evidence. The notebook containing Miller's name, phone number and drug notations and the binoculars were circumstantial evidence of Federico's knowledge and familiarity with drugs and drug transactions.[5]

■ Nor did the trial judge abuse his discretion in admitting this evidence. Whether the prejudicial effect of evidence so far outweighs its probative value that the evidence is excluded is a determination in which the trial court is given wide discretion. *See United States v. Martin*, 599 F.2d 880, 889 (9th Cir.), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 (1979) (admission of guns in trial of drug distribution and possession not an abuse of discretion). We cannot say that under the facts of this case that the trial judge abused his discretion in admitting the noncumulative evidence of the notebook and binoculars.

### C. The Co-Conspirator's Statements.

■ Federico argues that the testimony of Gilbert and agent Cintron that Miller said he did not have any drugs and that he had to meet his supplier is hearsay and may not be considered against Federico. The government responds that the statements were admissible against Federico under the co-conspirator hearsay exception. Fed.R.Evid. 801(d)(2)(E).

■ It is well settled that statements by a co-conspirator are admissible against a defendant if evidence from a source apart from the statements established that a conspiracy existed and that the member against whom the conversation is introduced had knowledge of, and participated in, the particular conspiracy alleged. *United States v. Weaver*, 594 F.2d 1272, 1274 (9th Cir. 1979) (quoting *United States v. Testa*, 548 F.2d 847, 852 (9th Cir. 1977)). The court, not the jury, determines the admissibility of the hearsay statements.[6] *See United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir. 1979); *Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). Before admitting the statements, this court requires substantial independent evidence of the conspiracy,[7] although only slight evidence is required to connect a co-conspirator. *See Weaver, supra.; United States v. Fried*, 576 F.2d 787, 793 n.7 (9th

---

5. These items are relevant even absent a showing that the notebook and binoculars were used during the course of the charged crime. Relevance is established by any showing, however slight, which makes it more likely than it was before the admission of the evidence that the defendant committed the crime in question. *See generally* Fed.R.Evid. 401, Notes of Advisory Committee on Proposed Rules. These items make it more likely (than it was before their admission) that Federico is guilty. They are relevant to show Federico's knowledge. *See* Fed.R.Evid. 404(b).

6. In this case, the judge instructed the jury that it could consider the co-conspirator's statements only if it found that a conspiracy had been shown beyond a reasonable doubt by independent evidence. This practice no doubt stems from the fact that *Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964), the landmark case holding that the judge determines the admissibility of co-conspirators' statements, included such an instruction. While the instruction is unnecessary under *Carbo* and probably not correct, *see* J.

Weinstein and M. Berger, *1 Weinstein's Evidence* ¶ 104[05] at 104–44.9, the instruction does not require reversal. The instruction, if anything, favored the defendant. Moreover, as in *United States v. Vargas-Rios*, 607 F.2d 831, 837 (9th Cir. 1979), the instruction in this case as well as the judge's comments indicate that he realized that he had to make the initial determination. The record shows that the district court found a prima facie case of conspiracy. *See also United States v. Giese*, 597 F.2d 1170, 1198 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979) (judge's submission of the case to the jury shows that he found a prima facie case of conspiracy).

7. Substantial evidence is necessary to show a prima facie case of conspiracy. *See United States v. Weaver*, 594 F.2d 1272, 1274 (9th Cir. 1979) (finding a prima facie case of conspiracy but no "slight evidence" to connect the defendant); *United States v. Dixon*, 562 F.2d 1138, 1141 (9th Cir. 1977) (reaffirmed in *United States v. Fried*, 576 F.2d 787 (9th Cir. 1978).

Cir.), *cert. denied*, 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978).

Viewed in the light most favorable to the government, *see United States v. Calaway*, 524 F.2d 609, 612 (9th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976), we believe the facts present a prima facie case that a conspiracy existed and show Federico's connection to it. During the course of Miller's drug transaction with Gilbert, Miller stopped to drop Gilbert off at his motel room. He then met Federico at what undoubtably was a prearranged location, since Miller did not place any phone calls during this period. After briefly conferring, *Federico* led the way to an airfreight parking lot. Federico and Miller got out of their respective vehicles and met between Miller's van and the wall, so that they were partially obstructed from view. Federico had his shirt off and was holding it in front of him in this enclosed parking lot. After this brief meeting, Federico got back in his car and led the way back to Miller's motel. After they arrived at the motel, Federico made a U-turn and left. Upon arrival, Miller immediately delivered the cocaine to Gilbert, who inspected it. Although the testimony may not be sufficient for the jury to have found a conspiracy beyond a reasonable doubt, it is sufficient to establish a prima facie case of conspiracy required to admit the statement. *See United States v. Vargas-Rios*, 607 F.2d 831, 837 (9th Cir. 1979).

This case is distinguishable from *United States v. Weaver, supra*, relied upon heavily by Federico. In *Weaver*, one Maddox agreed to sell cocaine to a DEA agent. Maddox met the agent later in the day and they both waited for Maddox's "connection" to arrive. Weaver arrived in the passenger seat of a truck driven by Mietsch. Mietsch took the cocaine to Maddox and the agent, who tested it. While the agent supposedly went to get the money, the arrest occurred. Weaver, who was arrested along with Maddox and Mietsch, was found with cocaine on his person. The court concluded that, aside from Mietsch's statements that his connection was in the truck, there was no evidence to connect Weaver to the conspiracy.

Unlike Weaver, Federico affirmatively acted. He was driving his car and led the way to various rendezvous points. Federico cannot argue, as Weaver did, that he was merely present when certain transactions occurred. For the reasons discussed earlier, we think Federico's actions in the circumstances of this case establish a conspiracy. Federico cannot avoid responsibility for these actions by arguing that he was a mere passenger when the suspicious activities occurred. Thus, *Weaver* is not persuasive. *Cf. United States v. Dixon*, 562 F.2d 1138 (9th Cir. 1977), *cert. denied*, 435 U.S. 927, 98 S.Ct. 1494, 55 L.Ed.2d 521 (1978), (defendant's attempt to hide and flee from the police, coupled with his presence in the truck of the man who delivered the cocaine was sufficient to establish the conspiracy for the purpose of the conspiracy exception).

Therefore, we hold that the court properly admitted as against Federico the statements of Miller that he had no drugs and that he had to meet his supplier.

## D. *Sufficiency of the Evidence.*

In determining whether a jury verdict rests on sufficient evidence, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bailey*, 607 F.2d 237, 243 (9th Cir. 1979), *cert. denied*, 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The question to ask is not whether the evidence excludes every hypothesis except guilt, but whether the trier of fact could reasonably arrive at its conclusion. *See United States v. Eaglin*, 571 F.2d 1069, 1076 (9th Cir. 1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978). All reasonable inferences from the evidence must be drawn in favor of the government. *United States v. Jabara*, 618 F.2d 1319, 1328 (9th Cir.), *cert. denied*, 446

U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980). Circumstantial evidence is sufficient to sustain a conviction. *United States v. Eaglin, supra,* at 1076.

The essential elements of conspiracy are "an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." *United States v. Bailey,* 607 F.2d at 243 (quoting *United States v. Friedman,* 593 F.2d 109, 115 (9th Cir. 1979)). Once the existence of a conspiracy is shown, "evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the *connection is slight,* is sufficient to convict him with knowing participation in the conspiracy." *Jabara,* 618 F.2d at 1328 (quoting *United States v. Dunn,* 564 F.2d 348, 357 (9th Cir. 1977) (emphasis in original)). The defendant's connection to the conspiracy must be shown to be knowledgeable, *i. e.,* the government must prove beyond a reasonable doubt that the defendant knew of his connection to the charged conspiracy. *United States v. Smith,* 609 F.2d 1294, 1299 (9th Cir. 1979); *United States v. Spanos,* 462 F.2d 1012, 1014–17 (9th Cir. 1972). Such knowledge must be shown by unequivocal evidence. *Miller v. United States,* 382 F.2d 583, 587 (9th Cir. 1967), *cert. denied,* 390 U.S. 984, 88 S.Ct. 1108, 19 L.Ed.2d 1285 (1968) (citing *Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943)).

When Miller's statements that he didn't have the drugs and that he had to meet his supplier are added to the independent evidence discussed above, we find sufficient evidence to support the jury's guilty verdict on the conspiracy count. If the jury believed Miller's statements, then it could have concluded beyond a reasonable doubt from those statements, Federico's actions and the fact that Miller met no one but Federico, that Federico knowingly agreed to the distribution of drugs to Gilbert and assisted Miller.

The evidence in this case is much stronger than two other cases which the circuit recently affirmed. In *United States v. Vargas-Rios,* 607 F.2d 831 (9th Cir. 1978), the defendant remained in the driver's seat while the passenger delivered the cocaine. The defendant had driven to several locations to complete the transactions. The defendant had also been observed looking around intently. The court concluded that this was sufficient evidence to find a conspiracy. In *United States v. Young,* 573 F.2d 1137 (9th Cir. 1978), the defendant drove up in an alley at 1:00 a.m. with his car lights off. He picked up a person waiting in the alley. They then drove forward to the DEA agent's car and the defendant's companion gave cocaine to the DEA agent. The court also found sufficient evidence to affirm the conspiracy. Thus, on the authority of *Vargas-Rios,* Federico's conviction on the conspiracy count withstands the challenge to the sufficiency of the evidence.

Because the custodial sentences for the possession and conspiracy counts are concurrent, we need not examine the sufficiency of the evidence on the other count. *See United States v. Valenzuela,* 596 F.2d 1361 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979).

Except for the special parole term, a matter in which the law was changed after this case was tried, there is no error and no basis for reversal. The special parole term is vacated as to the conspiracy count only. The remainder of the judgment is affirmed.

ALARCON, Circuit Judge, dissenting.

I dissent.

I would reverse the judgment on the grounds that the evidence is legally insufficient to connect appellant to the commission of any crime. In addition, I would hold that the district court's errors in the admission of the binoculars and the notebook were prejudicial in view of the woeful weakness of the government's case against Federico.

The government produced overwhelming evidence including a judicial confession that John Miller agreed to sell cocaine to a law

enforcement agent. We are not, however, concerned here with the sufficiency of the evidence against Miller. Putting aside Miller's hearsay statement to agent Cintron, the evidence produced against Federico consisted of the following facts.

*One.* Miller parked his car in a parking lot next to a brown Pontiac containing Federico who was in the driver's seat, and a woman, seated on the passenger side of the vehicle.

*Two.* Miller approached the passenger side of the vehicle. There is no evidence in the record which would establish or from which it could be inferred that this meeting was prearranged or a chance meeting. Nor is there any evidence that Federico had ever met or seen Miller before.

*Three.* Miller had a conversation with the woman and Federico. There is no evidence as to what was said.

*Four.* Miller returned to his car.

*Five.* Federico drove two blocks to an air freight terminal. There is no evidence as to whether Federico planned to go to this location prior to his conversation with Miller, or that they agreed to meet there.

*Six.* Miller drove to the same location.

*Seven.* The two cars were parked near each other.

*Eight.* Federico approached Miller while holding his shirt in his hand with his forearm level to the ground. There is absolutely no evidence from which it can be inferred that *anything* was handed to Miller by Federico.

*Nine.* Miller and Federico had a conversation. There is no evidence in the record as to what was said in this conversation.

*Ten.* Federico drove to Miller's motel, made a U-turn and continued on without stopping.

*Eleven.* A pair of binoculars were found in Federico's car.

*Twelve.* A notebook was found in Federico's possession. The terms in this notebook were commonly used in the illicit drug market. There was no evidence that any of these notations were connected in any way with the Miller-Gilbert cocaine transaction.

Based on this evidence my colleagues have concluded that the facts show that Federico conspired with Miller to possess and distribute cocaine. The majority concedes that "no direct evidence linked Federico to the plan to procure the cocaine and distribute it to Gilbert." *Ante* at 1341. In fact, there is absolutely no evidence, direct or indirect, to show that Miller entered into a plan with any other person to procure and distribute cocaine to Gilbert. There is no evidence that Federico and Miller had met until *after* Miller left the motel after he had agreed to procure cocaine for Gilbert. The majority assumes that the meeting with Federico was prearranged because there is no evidence in the record to show that it was arranged before hand. In other words, the majority suggests that the absence of any evidence of a plan to meet is sufficient proof from which it can be inferred that a meeting was planned if two people are later seen together. I know of no rule of evidence which would support such sophistic reasoning.

The majority concludes that "Federico cannot avoid responsibility for these actions by arguing that he was a mere passenger when the suspicious activities occurred." *Ante*, at 1343. I find this enigmatic passage quite baffling. To sustain this conviction the majority creates convenient straw men and then tears them apart triumphantly. First, what were Federico's actions? He had two conversations with Miller at two different locations. We do not know what was said. During one conversation he had his shirt in his hand. There is no evidence of any conversation between Federico and Miller concerning cocaine or any other subject. Second, Federico nowhere has argued that he was a mere passenger. In fact, the evidence shows that he was the driver of a car containing a woman passenger. The guilt of the woman passenger is not before us. It is interesting to note, however, that when Miller first approached the Federico car he went to the *passenger* side. There is no evidence as to what was said to Miller by the woman, or

whether she, unbeknownst to Federico, handed the cocaine to Miller. Nor for that matter do we have any evidence as to whether she directed Federico to follow Miller without advising Federico of the reasons for so doing. Since we have no evidence of any agreement to transfer any cocaine, we can just as easily speculate that she passed the cocaine to Miller, after conspiring with Miller to distribute it to Gilbert. I must assume that if Miller had said "I am going to get the cocaine from the *woman* who supplies my cocaine" my colleagues would have affirmed a conviction as to her, as well, despite the total absence of any evidence that she was aware of Miller's agreement to supply cocaine to Gilbert or that she had cocaine in her possession. There simply is no evidence in this record that Federico had any cocaine in his possession or that he handed anything to Miller, or that he conspired to commit the crime charged.

In determining whether a jury verdict rests on sufficient evidence the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bailey*, 607 F.2d 237, 243 (9th Cir. 1979), *cert. denied*, 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). All reasonable inferences from the evidence must be drawn in favor of the Government. *United States v. Jabara*, 618 F.2d 1319, 1328 (9th Cir.), *cert. denied*, 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980).

Circumstantial evidence is sufficient to sustain a conviction unless a rational trier of fact would have concluded that a reasonable hypothesis of innocence could be drawn from the evidence. *United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969). This test must be considered merely a reformulation of the basic reasonable-doubt standard required as an essential of due process in order that "no person shall be made to suffer the onus of a criminal con-

viction except upon sufficient proof...." *Jackson*, 443 U.S. at 316, 99 S.Ct. at 2788.

The essential elements of conspiracy are " 'an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense.' " *Bailey*, 607 F.2d at 243 (quoting *United States v. Friedman*, 593 F.2d 109, 115 (9th Cir. 1979)). Once the existence of a conspiracy is shown, " 'evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the *connection is slight*, is sufficient to convict him with knowing participation in the conspiracy.' " *Jabara*, 618 F.2d at 1328 (quoting *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977) (emphasis in original)). The defendant's connection to the conspiracy must be shown to be knowledgeable, *i. e.*, the Government must prove beyond a reasonable doubt that the defendant knew of his connection to the charged conspiracy. *United States v. Smith*, 609 F.2d 1294, 1299 (9th Cir. 1979); *United States v. Spanos*, 462 F.2d 1012, 1014–17 (9th Cir. 1972). Such knowledge must be shown by clear unequivocal evidence. *Miller v. United States*, 382 F.2d 583, 587 (9th Cir. 1967), *cert. denied*, 390 U.S. 984, 88 S.Ct. 1108, 19 L.Ed.2d 1285 (1968) (citing *Direct Sales Co. v. United States*, 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943)).

Hearsay statements of Federico's co-conspirator were admissible as against Federico *only* if evidence from a source apart from the statements established that a conspiracy existed and that Federico had knowledge of and participated in the particular conspiracy alleged. *United States v. Weaver*, 594 F.2d 1272, 1274 (9th Cir. 1979).

In order for the extrajudicial statement of a co-conspirator to be admissible, there must be substantial independent evidence of the conspiracy and, once the conspiracy is shown, slight evidence is required to connect the co-conspirator to it. *Id.* The evidence aside from Miller's statements that he did not have the cocaine in his possession

and would have to obtain it from his supplier did not establish a conspiracy nor Federico's connection to it. *See Spanos*, 462 F.2d at 1016 (failure to show prima facie case of conspiracy based on one large sale in the absence of evidence that the seller agreed to the charged conspiracy); *Ong Way Jong v. United States*, 245 F.2d 392, 394–95 (9th Cir. 1957) (failure to prove prima facie case where the buyer, who had multiple sources, met with the defendant and no one else several times shortly before delivery). Consequently, the statements were improperly admitted against Federico.

Aside from Miller's statement the only evidence against Federico consisted of two brief conversations. The fact that Federico spoke to Miller does not establish his knowing participation in a criminal conspiracy.

The standard for determining the existence of a single conspiracy and, therefore, its scope, is " 'whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy....' " *Jabara*, 618 F.2d at 1327 (*quoting United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). Evidence of prior drug dealings, and association with co-conspirators known to deal in drugs cannot be used to prove that a defendant committed the acts charged if the prior acts are unrelated to the conspiracy. *See United States v. Testa*, 548 F.2d 847, 851 (9th Cir. 1977); Fed.R.Evid. 404(b). The court correctly instructed the jurors that they also could not infer from such evidence "a propensity to commit the offenses charged." *Id.* Moreover, unrelated drug activities are inadmissible as evidence of a defendant's association with a conspiracy. *See United States v. Bosley*, 615 F.2d 1274, 1277–78 (9th Cir. 1980); *Testa*, 548 F.2d at 851–52.

Although the notebook containing the allegedly drug-related terms was probative of Federico's knowledge of drugs and possible intent to engage in drug trafficking, it is not relevant to prove Federico agreed to engage in the charged conspiracy in the absence of evidence that the notebook related to the sale of the cocaine in question to Gilbert. *See Bosley*, 615 F.2d at 1277–78 (finding proper a ruling that a prior delivery of cocaine by the defendant outside the scope of the charged conspiracy was inadmissible to prove the defendant's association with the conspiracy). The binoculars similarly had no probative value on the question whether Federico conspired to effectuate the delivery of the cocaine to Gilbert.

There are instances where an agreement constituting a conspiracy may be inferred from a concert of action, all the parties working together with a single design for the accomplishment of a common purpose. *United States v. Camacho*, 528 F.2d 464, 469 (9th Cir.), *cert. denied*, 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976). Nevertheless, the acts of the parties must reasonably support a conclusion that the particular defendant in question willfully participated in the unlawful plan with the intent to further some object or purpose of the conspiracy. *See Testa*, 548 F.2d at 853. The fact that proof of a conspiracy must ordinarily rest on inferences drawn from circumstantial evidence does not relieve the prosecution from showing that each defendant had some knowledge, explicit or implied, of the conspiracy. *Miller*, 382 F.2d at 586.

The question is whether an agreement to obtain the cocaine and sell it to Gilbert, the conspiracy charged, may reasonably be inferred from the concerted acts of the alleged co-conspirators, Federico and Miller. The indictment charged that Federico, Miller and others had conspired to possess and to distribute approximately one pound of cocaine. It alleged that Federico had participated by discussing the sale of the cocaine to Gilbert with Miller, securing the drug, and giving it to Miller.

The evidence was overwhelming that Miller, at Gilbert's instigation, arranged to obtain the cocaine and deliver it to Gilbert in Los Angeles. Assuming *arguendo* that Federico did give the cocaine to Miller during one of his two contacts with him, the record is devoid of evidence establishing that Federico knew that the overall plan

was to procure the drugs for delivery to Gilbert. Mere knowledge on the part of the seller that the person who buys a large quantity of drugs from him probably intends to distribute the drug to third persons is not sufficient to sustain the seller's conviction of conspiracy with the buyer to resell. *See Direct Sales Co.*, 319 U.S. at 709, 63 S.Ct. at 1268; *Spanos*, 462 F.2d at 1014–17. Moreover, it would ignore the long-standing recognition that the commission of the substantive offense and a conspiracy to commit the substantive offense are separate and distinct offenses. *See United States v. Batimana*, 623 F.2d 1366, 1370 (9th Cir. 1980).

The acts charged concern a single drug transaction. A single sale of drugs, the getting together to consummate the transaction, without more, does not establish conspiracy. *United States v. Izzi*, 613 F.2d 1205, 1210 (1st Cir.), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 793 (1980). In *Izzi*, the court found that the defendant's delivery of a large quantity of heroin and his presence at a prior meeting with the proposed buyer was not enough to prove that he had knowledge of the common plan and purpose of a large-scale ongoing conspiracy. *Id.* The vital link—Federico's knowledge of the admittedly small-scale distribution scheme charged—is similarly not shown by the evidence and cannot reasonably be inferred from it. *Id.; Bailey*, 607 F.2d at 243–45 (an occasional buyer from a member of a large-scale conspiracy not shown to be a participant); *United States v. Harbin*, 601 F.2d 773, 784 (5th Cir.), *cert. denied*, 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 327 (1979) (single sale to a number of conspirators for their personal use not sufficient evidence of conspiracy); *United States v. DeNoia*, 451 F.2d 979, 981 (2nd Cir. 1971) (single delivery in transaction planned by others insufficient to sustain conspiracy conviction) (conviction sustained under concurrent sentence doctrine). Cases in which the evidence has been found sufficient are distinguishable by facts from which it would be reasonable to infer knowledge of the object of the charged conspiracy. *See, e. g., United States v.*

*Vargas-Rios*, 607 F.2d 831, 834–35 (9th Cir. 1979) (knowledge of conspiracy to distribute inferred from defendant's substantial role in an illegal transaction as chauffeur of the car containing the drug and from his numerous appearances with co-conspirators during the course of negotiations with the prospective buyers); *United States v. Thomas*, 586 F.2d 123, 127–29 (9th Cir. 1978) (continuing involvement with members of a conspiracy and role as messenger sufficient to show knowledge of conspiracy); *United States v. Young*, 573 F.2d 1137, 1139 (9th Cir. 1978) (knowing participation inferred from defendant's meeting with co-conspirator at 1:00 A.M. in a secluded alley after the latter had made several phone calls and immediately before co-conspirator delivered the drugs).

The probable explanation for the fact that the jury did draw the inference that Federico had cocaine in his possession is its possible reliance on Miller's statements to the effect that he was going to meet with his supplier. As previously stated, those statements were improperly admitted as against Federico. Clearly, the other evidence presented was insufficient to support an inference that Federico had possession of the cocaine in the absence of any evidence that he ever touched the paper bag containing the drug or handed anything to Miller. As the government conceded, at oral argument, despite Miller's statements about meeting his supplier, Miller may have had the cocaine in the van when he initially arrived at the airport. Thus, it was entirely possible that Miller had exclusive possession of the cocaine at all times.

Even without the exclusion of Miller's highly prejudicial statements, the evidence was insufficient to support his conviction of possession and distribution of the cocaine.

Circumstantial evidence alone may be sufficient to sustain a conviction even where it does not exclude every reasonable hypothesis consistent with innocence, so long as the jury weighs it against the standard of reasonable doubt. *Nelson*, 419 F.2d at 1241. *Accord, United States v. Grayson*, 597 F.2d 1225, 1229 (9th Cir.), *cert. denied*,

444 U.S. 873, 100 S.Ct. 153, 62 L.Ed.2d 99 (1979); *see Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Nonetheless, where the evidence permits either of two rational inferences—one of innocence and the other of guilt—the reasonable-doubt standard requires a finding of innocence. *See Grayson*, at 1230.

The jury could reasonably infer from the evidence that: (1) Federico met and conversed with Miller during the time between his leaving the motel (having previously stated that he was going to obtain the cocaine from his supplier) and the time he returned and gave the drug to Gilbert; (2) Federico and the passenger in his car were the only persons to have met with Miller during this period; (3) Federico had a prior association with Miller; (4) Federico may have been involved in other drug transactions. Although Federico's actions may have been suspicious, and he probably had the opportunity to transfer the contraband to Miller, there simply is no evidence in the record that Federico ever had the cocaine in his possession. Federico's conviction cannot be sustained on mere speculation that he delivered the cocaine to Miller and there is no evidence in the record to support such an inference. It cannot be said that *any* rational trier of fact could have found Federico guilty of possession of the cocaine beyond a reasonable doubt. *Compare United States v. Perez*, 491 F.2d 167, 170 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974) (evidence that defendant carried a purse and shopping bag containing large quantities of heroin and handed the purse to her husband who gave the heroin to an officer sustained her conviction for possession and distribution of heroin) with *United States v. Camarillo*, 431 F.2d 616, 618 (9th Cir. 1970) (presence in a house coupled with knowledge of a drug transaction occurring in another room and association with the seller insufficient to sustain conviction for selling heroin). I would vacate the judgment of conviction of appellant and remand with instructions to dismiss the indictment.