UNITED STATES of America, Plaintiff-Appellee,

v.

Carla JABARA, John T. McClain, Earl Moore, Ella Hood, Evelyn Hatch, Curtistine Rideout, Defendants-Appellants.

Nos. 79–1095, 79–1118, 79–1225, 79–1272, 79–1304 and 79–1355.

United States Court of Appeals, Ninth Circuit.

April 2, 1980.

Rehearing in Nos. 79–1118 & 79–1095 Denied June 5, 1980.

Tom G. Kontos, Samuel Jackson, Los Angeles, Cal., Vincent J. Marella, Beverly Hills, Cal., Robert M. Talcott, Edward I. Gritz, Danilo J. Becerra, Los Angeles, Cal., for defendants-appellants.

Alan J. Weil, Asst. U. S. Atty., Los Angeles, Cal., argued, Andrea Sheridan Ordin, U. S. Atty., Alexander H. William III, Asst. U. S. Atty., Los Angeles, Cal., Linda C. Jamieson, U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before CHOY, HUG and SKOPIL, Circuit Judges.

HUG, Circuit Judge:

This is a consolidated appeal from convictions on a ten-count indictment for narcotic offenses. All appellants were found guilty by the jury of conspiring to possess with intent to distribute, and to sell and distribute, heroin, cocaine, methaqualone and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The trial judge entered judgment on that count against all appellants, except Moore. As to Moore, the trial judge granted a motion for acquittal on the conspiracy count. All appellants except Hatch were convicted of various substantive counts for possession with intent to distribute and distribution of various narcotics.

## FACTS

This case involves an extensive drug conspiracy, which operated from May 1974 until March 1978, centering in Southern California and extending to other states. Arrests followed an eleven-month investigation by agents of the Drug Enforcement Administration (DEA). Wiretaps, purchases of drugs by undercover agents, and physical and video surveillance were the primary tools of investigation.

The Government characterized appellant John McClain as the primary source of the drugs; he was, however, well insulated from direct contact with purchasers. Appellant Carla Jabara acted as McClain's assistant; appellants Curtistine Rideout, Evelyn Hatch and Ella Hood were the "runners." They made the actual pickup of drugs and sales to purchasers. Appellant Earl Moore was described as a secondary distributor of drugs and was involved in transactions only when McClain was unavailable.

The DEA began its investigation in April 1977; DEA special agents, John Jackson and John Peoples, negotiated with Hood and Rideout for the purchase of heroin.

Sales of heroin took place on April 25, 1977 and September 16, 1977. In both transactions, undercover agents gave money to Hood to purchase heroin. Hood gave the money to Rideout, who proceeded to a house in Beverly Hills. McClain was observed at this house. Rideout returned with heroin and consummated the sale. One other attempted purchase in September 1977 failed when no narcotics were available.

Starting on August 31, 1977 DEA agents intercepted and recorded telephone conversations on Rideout's telephone pursuant to a court-authorized wiretap. The wiretap continued for fifty days. In October a thirty-day wiretap was placed on another of Rideout's phones. In addition to the wiretaps, DEA agents also conducted videotape surveillance on Rideout's residence.

Evidence was introduced at trial that on September 21, 1977 Rideout made a telephone call to Alaska. The following day Wanda Mullins traveled from Alaska to Rideout's apartment. Surveillance agents observed Rideout leave her apartment, meet with Moore, and return home. After Rideout returned, Mullins boarded a plane for Alaska. When she arrived in Anchorage she was arrested, and a quantity of cocaine was seized from her.

From November 1977 until March 1978 DEA agents conducted no undercover activity in the case, nor did they contact any of the defendants. The Government contended, however, that during this time it was analyzing approximately three thousand intercepted calls from the wiretaps on Rideout's phones.

In March 1978 DEA agents decided to reestablish contact with Rideout for the purpose of making another drug purchase. The DEA had determined, through the analysis of intercepted phone calls, that Rideout might cooperate and aid in the investigation if she were arrested. It was decided that if she sold a significant quantity of narcotics to an agent, she would be arrested. Based on this decision, agent Jackson began negotiating with her for the sale of heroin.

On March 20, 1978, as Jackson continued to work out a "deal" with Rideout, other DEA agents conducted surveillance on Jabara's apartment. One agent met with the building manager and arranged to be admitted into an apartment adjacent to Jabara's apartment. The agent told the manager that an arrest might be made that night. Later, however, the agent returned the key and stated that no arrest would be made that day.

On March 21 Rideout was arrested shortly after she sold heroin to DEA agent Jackson. Rideout had obtained the drug from Moore, who was arrested the same day. Moore had in his possession some of the recorded funds that Jackson had paid to Rideout. Moore was advised of his rights, and signed a consent to search form. A search of his apartment turned up heroin, cocaine and lactose.

Rideout was not cooperative, as the agents had hoped, and she made attempts to notify other defendants of her arrest. The DEA contacted a magistrate concerning arrest warrants for the other defendants but realized that it would require considerable time to prepare supporting affidavits, and that the other defendants might be warned in the meantime. Accordingly, an Assistant United States Attorney in charge of the investigation authorized that arrests be made without warrants.

At approximately 9:35 p. m. on March 21, agents knocked on Jabara's apartment and announced their presence. Upon being admitted to the apartment with guns drawn, the agents immediately arrested Jabara and McClain. Agents seized a number of items from the apartment, including nearly $55,-000 in cash. A quantity of cocaine was discovered located in a driveway outside the apartment, four stories beneath the apartment's kitchen window. Hood was arrested later that night. No arrest warrants were obtained for the arrest of any defendant.

Two days after the arrests, DEA agents obtained a search warrant for Jabara's other apartment. Cocaine, mannite, a scale and a heat sealer were seized in the search. Those items were introduced at the trial against all the defendants.

ARGUMENTS

The appellants raise thirteen principal assignments of error. We will relate additional pertinent facts in the discussion of each issue.

1. Jabara and Moore argue that their arrests were not based on probable cause. Carla Jabara argues that there was insufficient evidence available to the arresting officer to establish probable cause. Jabara asserts three principal contentions as to why the evidence relied on by the Government did not establish probable cause for her arrest. First, she argues that the reliability of certain government informants was not demonstrated. Second, she argues that the information was stale, because the information allegedly concerned her conduct in 1975 and the arrest took place in 1978. Third, she notes that her voice was never intercepted in the wiretaps. All of Jabara's contentions are without merit. The reliability of the government informants was established by their declarations against penal interest. The information provided by Antoinette Griffin and Jeannine Collins implicated them in the crime of violating federal narcotics laws. It is well-settled in this circuit that a declaration against penal interest meets the reliability test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See United States v. Damitz*, 495 F.2d 50, 55 (9th Cir. 1974); *United States v. Harris*, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2081–82, 29 L.Ed.2d 723 (1971). A review of the record also discloses that the information the Government relied on was not stale. While Jabara contends that all the information provided to the Government involved her alleged activities in 1975, the record clearly shows that the information concerned her activities in 1975 and 1977. Thus, the information was not three years old as Jabara asserts. While Jabara correctly contends that the wiretap interceptions never recorded her voice, the fact that her voice was

never intercepted does not negate the other evidence that established probable cause. Furthermore, a review of the record indicates that a wiretap interception did record conversations between Jabara's co-defendants which implicated her in the conspiracy. We conclude that there was probable cause to believe that Jabara was involved in a conspiracy to violate federal narcotics laws. *See United States v. Watson*, 423 U.S. 411, 431 n.4, 96 S.Ct. 820, 831, 46 L.Ed.2d 598 (1976).

Moore also contends that there was not probable cause to arrest him for participation in any illegal drug activity. Moore further contends that prior to his arrest the officers reached into his pocket and pulled out a large sum of money, which constituted an unreasonable warrantless search. A review of the record demonstrates that there was probable cause to arrest Moore for conspiracy to violate federal narcotics laws. *See id.* The record also indicates that the search of Moore's pocket was incident to the arrest. *See United States v. Chatman*, 573 F.2d 565, 567 (9th Cir. 1977).

■ 2. Both McClain and Jabara contend that exigent circumstances did not exist at the time of their warrantless arrests at Jabara's residence at 304 S. Elm Drive, Beverly Hills. The rule is well-settled in this circuit that "absent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest." *United States v. Prescott*, 581 F.2d 1343, 1350 (9th Cir. 1978) (footnote omitted). In the instant case the agents did not have arrest warrants for Jabara or McClain at the time of their arrests. Because the arrests took place at Jabara's residence, the Government must establish exigent circumstances in order for the arrests to be justified under the Fourth Amendment.

■ The Government asserts that once Rideout had been arrested, there was a danger that her arrest might precipitate the flight of McClain and Jabara and the destruction of evidence. Because of intercepted statements of Rideout the Government had reasonably anticipated that Rideout would be willing to cooperate with the Government in building its case against the other defendants; however, Rideout proved unwilling to cooperate and her conduct also indicated that she would attempt to notify various co-conspirators of her arrest. It was reasonable to conclude that the affidavits to support arrests of the principal conspirators identified in the investigation could not have been prepared in time to avert the flight or destruction of evidence. The trial court, predicating its finding on the possibility of both flight and destruction of the evidence, held that there were exigent circumstances justifying the warrantless arrests at Jabara's residence. The probability of destruction of evidence and flight do constitute exigent circumstances. *See United States v. Flickinger*, 573 F.2d 1349, 1356 (9th Cir.), *cert. denied*, 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978); *United States v. Curran*, 498 F.2d 30, 35–36 (9th Cir. 1974); *United States v. Evans*, 481 F.2d 990, 993 (9th Cir. 1973). We conclude that the trial court's finding was not clearly erroneous; we affirm the finding. *See United States v. Flickinger*, 573 F.2d at 1357.

3. Both Jabara and McClain contend that all the evidence seized at Jabara's South Elm Drive residence following the arrest should have been suppressed. They first argue that exigent circumstances did not exist to justify their warrantless arrests and that the evidence should be suppressed on that ground. For the reasons discussed above, we find no merit in this contention.

■ Jabara and McClain also contend that the evidence the Government justified seizing on grounds of plain view, abandonment, and consent should have been suppressed. We conclude that the seizure of the package containing cocaine and the small tray that were discovered in the open drawer of the night table was justified under the plain view doctrine. *See Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *Musgrove v. Eyman*, 435 F.2d 1235, 1238 (9th Cir. 1971). The seizure of the shopping bag

containing over ten pounds of cocaine and heroin, which had been dropped out the window of the Jabara residence, was justified on the theory of abandonment. *See United States v. Wilson*, 472 F.2d 901 (9th Cir.), *cert. denied*, 414 U.S. 868, 94 S.Ct. 176, 38 L.Ed.2d 116 (1973).

■ Jabara and McClain argue that they did not voluntarily consent to the search of the premises and conclude that the evidence seized pursuant to the purported consent search should have been suppressed. The trial court held that Jabara and McClain voluntarily consented to the search. We must apply the "totality of the circumstances" test set forth in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), to determine whether the trial court's determination that Jabara and McClain voluntarily consented to the search was clearly erroneous. *United States v. Calhoun*, 542 F.2d 1094, 1100–02 (9th Cir. 1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977). Jabara and McClain were given their *Miranda* warnings and both signed formal consent search forms which explicitly stated that they understood that any evidence, found as a result of the search, could and would be used against them in any civil or criminal proceedings. In addition, shortly after McClain's arrest, prior to the execution of the formal consent search form, McClain stated that he wanted the agents to search the premises and "get it over with." We conclude that the trial court's finding of voluntary consent cannot be set aside under the clearly erroneous standard.

4. Moore argues that the trial court erred in finding that he consented to the search of his apartment. After he was given his *Miranda* warnings, Moore signed a consent search form. Viewing the "totality of the circumstances," we find that the trial court correctly determined that Moore consented to the search. *See id.*

5. Both Jabara and McClain assert that Agent Jackson's affidavit, which supported the search warrant for Jabara's other residence located at 7767 Hollywood Boulevard, apartment 306, contained four material misrepresentations of fact and that these misrepresentations of fact served to vitiate the warrant. They therefore conclude that all the evidence seized pursuant to the warrant should have been suppressed under the Fourth Amendment. Additionally, Jabara and McClain argue that once the misrepresentations are excized from the affidavit, as required by *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the affidavit fails to establish probable cause that they were part of a conspiracy or that facts or instrumentalities could be found in the apartment.

■ At the outset, we note that McClain concedes in his brief that "he had absolutely nothing to do with the [Hollywood Boulevard] apartment." Therefore, McClain could not challenge the evidence seized at the Hollywood Boulevard apartment, because he had no legitimate expectation of privacy in the premises. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Scharf v. United States Attorney General*, 597 F.2d 1240, 1244 (9th Cir. 1979); *United States v. Culbert*, 595 F.2d 481, 482 (9th Cir. 1979) (per curiam).

■ If a defendant can establish that a warrant affidavit contains (1) a statement or statements that are either deliberate falsehoods or made with reckless disregard for their truth and (2) the court finds that the challenged material is necessary to a finding of probable cause, then the warrant must be voided. *See Franks v. Delaware*, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2685, 57 L.Ed.2d 667 (1978); *United States v. Young Buffalo*, 591 F.2d 506, 508–12 (9th Cir.), *cert. denied*, 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979). In the instant matter, the trial court held that the four alleged misstatements were not intentional misrepresentations, and that even after excising the four alleged misstatements, the affidavit was sufficient to establish probable cause. Upon reviewing the record it is apparent the errors were minor and unintentional. The findings of the trial court are well supported by the evidence and we conclude that the search warrant was validly issued. *See Franks v. Delaware*, 438 U.S.

at 171–72, 98 S.Ct. at 2685; *United States v. Young Buffalo*, 591 F.2d at 508–12. The evidence seized at the Hollywood Boulevard apartment was properly admitted into evidence.

 6. Both McClain and Jabara argue that the evidence seized at the Hollywood Boulevard apartment should have been excluded as being irrelevant and unduly prejudicial. The evidence in question consisted of quantities of cocaine and mannite, a scale and a heat sealer. McClain and Jabara fail to demonstrate how evidence of narcotics and narcotics paraphernalia are irrelevant in a narcotics conspiracy case. The evidence was properly found to be relevant. Fed.R.Evid. 401. Under the circumstances, the evidence was not unduly prejudicial and the trial court did not abuse its discretion in admitting the evidence. *See United States v. Watkins*, 600 F.2d 201, 204 (9th Cir. 1979).

7. Jabara, McClain, Moore, Hatch and Rideout argue that the wiretaps were unlawful.

(a) *Standing*

 The trial court specifically found that "defendant Jabara lacks standing to challenge the validity of the wire intercepts because she [was] not an 'aggrieved person' within the meaning of 18 U.S.C. § 2518(10)(a)." Because Jabara has failed to establish that she was a party to an intercepted conversation or that an intercepted conversation occurred on her premises, the finding of the trial court was correct. *See United States v. Calhoun*, 542 F.2d 1094, 1097–98 (9th Cir. 1976).

(b) *The Affidavits*

 McClain, Rideout, Hatch, and Moore argue that the Government failed to meet the necessity requirements of 18 U.S.C. § 2518(1)(c) in their applications for the wiretap authorizations. They contend that the Government had adequate alternative means to obtain the evidence and information it desired. They therefore contend that all evidence obtained through the two wiretaps should have been suppressed.

Section 2518(1)(c) requires the following: (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

In the Government's applications for the wiretap authorizations, the Government did submit affidavits by Agent Jackson to satisfy section 2518(1)(c). Based on these affidavits, the trial court held that the "use of traditional investigative procedures, exclusively, would have been likely to jeopardize the outcome of the investigation, and that under all the circumstances presented by this scheme wiretaps were essential." We have reviewed the affidavits of Agent Jackson and conclude that the trial court correctly ruled, in accordance with section 2518(1)(c), that the use of traditional investigative procedures would have been too dangerous.

(c) *The Second Wiretap Authorization*

 McClain, Rideout, Hatch, and Moore argue that the second wiretap application was improper. Attorney General Griffin Bell, pursuant to 18 U.S.C. § 2516, had specifically authorized the Assistant Attorney General in charge of the Criminal Division (Benjamin Civiletti), and the Assistant Attorney General in charge of the Office of Legal Counsel (John M. Harmon) to authorize applications to federal judges for wire intercepts. The second wiretap authorization was made by John Harmon, Assistant Attorney General of the Office of Legal Counsel. Defendants correctly assert that the Attorney General's order conditioned Mr. Harmon's power to authorize the wiretap application on Mr. Civiletti's absence from the District of Columbia or on his unavailability. From this point they argue that the Government has the burden of proof of establishing Mr. Civiletti's unavailability, as a condition precedent to Harmon's exercise of that power. They further contend that in the absence of some affirmative showing that Mr. Civiletti was unavailable to authorize the wiretap applications, no presumption of regularity is entitled to be granted to Mr. Harmon's signature.

The defendant has the initial burden of establishing a prima facie showing that the condition precedent has not been met in order to challenge the wiretap. Because authorization orders are presumed to be proper, *see United States v. Feldman*, 535 F.2d 1175, 1180–81 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Turner*, 528 F.2d 143, 151 (9th Cir.), *cert. denied*, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975), the condition precedent in the instant case is presumed to have been met. The defendants have offered no evidence, aside from their own conjecture and speculation, to rebut this presumption. Absent some affirmative showing by the defendants that the authorization application was not properly authorized, we will not invalidate the wiretap order, which was otherwise properly issued. *Cf. United States v. De La Fuente*, 548 F.2d 528, 531–37 (5th Cir.), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977) (where the court rejected the defendants' argument that the Government must authenticate the Attorney General's signature on an authorization order as a predicate to the use of the wiretap evidence).

■ 8. McClain, Rideout, and Jabara argue that the evidence adduced at trial was insufficient to prove the single overall conspiracy charged in the indictment. They contend that the evidence proved several separate and independent conspiracies not charged in the indictment. McClain, Rideout, and Jabara also assert that they were deprived of their right to a fair trial because a severance of trials should have been granted, and that there was a fatal variance between the proof adduced at trial and the crime charged in the complaint. Their arguments of severance, misjoinder, and variance are simply a restatement of their basic contention that the evidence adduced at trial proved several separate and independent conspiracies and not the single overall conspiracy charged in the indictment. Hatch argues that while the evidence adduced at trial may have been sufficient to prove her guilty of a separate conspiracy, the evidence failed to establish that she was a member of the main conspiracy charged in the indictment. The issue is whether the evidence adduced at trial proved that McClain, Rideout, Jabara, and Hatch were members of the single overall conspiracy charged in the complaint.

The essence of the defendants' argument is that there were six separate and independent acts or activities proved at trial all of which constituted six separate conspiracies. According to the defendants these six separate conspiracies were separated by time, persons, places and overt acts. In *United States v. Kearney*, 560 F.2d 1358, 1362 (9th Cir.) *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977), this circuit rejected a similar contention, stating:

> Appellants assert that the Government swept several discrete conspiracies into a single conspiracy count, and that this was a misjoinder which worked to their prejudice, effecting "guilt transference" by associating them with co-defendants involved in other criminal acts. In so contending, appellants confuse *separate acts at separate times* with *separate conspiracies*. Almost any venture, criminal or legitimate, is analyzable into a series of bits, each of which, in turn, is characterizable as an independent plan or goal. The standard for determining the existence of a single conspiracy, however,
>
> ". . . is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy . . . ." (Emphasis in original).

It is sufficient for the Government to prove that each defendant knew, or had reason to know, that others were involved in a broad project for illegal distribution of narcotics, and that his or her benefits were probably dependent upon the success of the entire operation, *id.* at 1362. "Proof that an alleged co-conspirator knew that he was plotting in concert with others to violate the law is sufficient to raise the necessary inference that he [or she] joined in the overall agreement. . . . It need not even be shown that an alleged co-conspirator knew all of the purposes of and all of the participants in the conspiracy." *Id.* Viewing the

evidence in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Rich*, 580 F.2d 929, 934 (9th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 33 (1978), and drawing all reasonable inferences from the evidence in favor of the Government, *United States v. Winn*, 577 F.2d 86, 91 (9th Cir. 1978), we conclude that the evidence was sufficient to establish the existence of a single conspiracy.

Once the existence of a conspiracy is established, "evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the *connection is slight*, is sufficient to convict him with knowing participation in the conspiracy." *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977) (emphasis in original). A review of the evidence clearly establishes a connection between these appellants and the conspiracy. Thus, the evidence was sufficient to prove that McClain, Rideout, Jabara and Hatch were members of the conspiracy charged in the indictment.

9. Moore contends the court erred in denying his motion to sever his trial from the other defendants. The trial court granted Moore's motion for judgment of acquittal on the conspiracy charge, but Moore still stands convicted on four counts of aiding and abetting Rideout in the possession of and distribution of cocaine and heroin. Moore contends that he was prejudiced by the trial court's failure to sever his trial from that of the other defendants.

The trial court found that joinder was proper under Fed.R.Crim.P. 8(b), which provides that joinder of defendants is proper when the parties are alleged to have participated "in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." The court noted further that the proof against each of the defendants would "involve substantial portions of proof against the co-defendants and that none of the defendants [would] be prejudiced by a joint trial." Moore was charged with conspiracy and other acts which involve allegations that he participated with the other defendants in

the same act or transactions or in the same series of acts or transactions. "The trial judge has broad discretion under Rule 14, Fed.R.Crim.P., to grant or deny motions for severance, and denial of such a motion will be reversed only after an appellant has met the heavy burden of showing the trial judge abused that discretion." *United States v. Ortiz*, 603 F.2d 76, 78 (9th Cir. 1979). Upon review of the ruling in light of the evidence we find no abuse of discretion.

10. Moore argues that the prosecutor's comment on his failure to produce a witness deprived him of a fair trial. In closing argument, the prosecutor commented on the fact that the jury had heard no testimony from an unnamed man who a witness claimed gave money to Moore prior to his arrest on March 21, 1978. Moore's trial counsel objected to the prosecutor's comment and moved for a mistrial. The trial court denied the motion for mistrial, instructed the prosecutor not to comment on that issue, and immediately instructed the jury that Moore had no obligation to produce any evidence. Moore argues, without merit, that the prosecutor's comment deprived him of his right to a fair trial. The prosecutor's comment did not involve privileged testimony or a comment upon excluded evidence and was not error. *See United States v. Nace*, 561 F.2d 763, 770 (9th Cir. 1977).

11. Hood contends that the trial court erred when it refused to give an entrapment instruction on her behalf. The defense of entrapment consists of two elements: (1) Government agents must induce the defendant to commit the offense; and (2) the defendant's predisposition must be such that he is not ready and willing to commit the offense on any propitious opportunity. *United States v. Glaeser*, 550 F.2d 483, 486–87 (9th Cir. 1977). The record reveals that the conduct of the agents, at most, amounted to assistance in the commission of the crime, which is insufficient to show entrapment. *See United States v. Ratcliffe*, 550 F.2d 431, 434 (9th Cir. 1976). In addition, Hood was clearly predisposed to commit the crime. She had a prior federal conviction for possession of heroin with intent to distribute; she was familiar with

the code words used in the narcotics transactions; she never once rejected outright any involvement in the narcotics deals; she negotiated the best price for the sale of narcotics to undercover agents, accepted cash for her services in the narcotics transactions, and she dealt with two undercover agents over the course of a year. Thus, Hood did not meet her preliminary burden of establishing that she was induced to commit the crime and that she was not predisposed to commit the crime. *See United States v. Hermosillo-Nanez*, 545 F.2d 1230, 1232 (9th Cir. 1976); *cert. denied*, 429 U.S. 1050, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977).

When the evidence presents no genuine dispute as to whether the defendant was entrapped, there is no factual issue for the jury, and the judge has a duty to rule on the defense as a matter of law. *Glaeser*, 550 F.2d at 487. Under the circumstances of this case, there was no factual issue for the jury and the trial court correctly ruled that, as a matter of law, Hood was not entrapped.

12. Jabara argues that the trial court erred in admitting irrelevant and improper character evidence showing that she was not gainfully employed. This evidence created the reasonable inference that Jabara's unexplained wealth came from the narcotics conspiracy, which is relevant in a narcotics conspiracy case. *See United States v. Tramunti*, 513 F.2d 1087, 1105 (2d Cir.) *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). It was not admitted to show conduct in conformance with a character trait, but rather to show the likelihood that she received funds from the narcotics conspiracy. The trial court properly admitted the evidence.

13. Rideout contends that there was insufficient evidence to convict her on Counts VI and VII of the indictment, involving possession and distribution of four ounces of cocaine on September 22, 1977. The concurrent sentence doctrine makes it unnecessary for us to consider Rideout's contention, because she stands convicted on seven other counts upon which she was sentenced to terms of imprisonment that are equal to, and run concurrent with, the terms of imprisonment imposed for Counts VI and VII. *See United States v. Romano*, 382 U.S. 136, 138, 86 S.Ct. 279, 280, 15 L.Ed.2d 210 (1965); *Barnes v. United States*, 412 U.S. 837, 848 n. 16, 93 S.Ct. 2357, 2364, 37 L.Ed.2d 380 (1973); *Jordan v. United States*, 416 F.2d 338, 346 (9th Cir. 1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 930, 25 L.Ed.2d 101 (1970).

The Government argues that the trial court erred in granting Moore's motion for judgment of acquittal as to the conspiracy charge. We uphold the ruling of the trial court that, viewing the evidence in the light most favorable to the Government, the evidence does not support a rational conclusion that Moore was guilty beyond a reasonable doubt of the conspiracy charge. *See United States v. Ramos*, 558 F.2d 545, 546–47 (9th Cir. 1977); *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977). We thus affirm the trial court on this issue.

AFFIRMED.