**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Hilda Escobar DeBRIGHT,**
**Defendant-Appellant.**

No. 81–1648.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1982.

Decided July 21, 1983.

Rehearing En Banc Granted Sept. 2, 1983.

---

Robert L. Murray, Tucson, Ariz., for defendant-appellant.

Jon R. Cooper, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before FLETCHER, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Hilda Escobar DeBright[1] was convicted of conspiring to import heroin (Count One), illegally importing heroin (Count Two), conspiring to possess heroin with intent to distribute (Count Three), and illegally possessing heroin with intent to distribute (Count Four).[2] She received concurrent six-year sentences on all four counts. She takes no exception to her convictions on Counts Two through Four. She challenges only her conviction on Count One, contending that the refusal of the district judge to accept a proposed jury instruction on the issue of conspiracy was reversible error. She also contests the propriety of the length of her sentences.

Since three of the convictions are uncontested and the sentence on the remaining count runs concurrently, under the concurrent sentence doctrine we need not reach the merits of DeBright's claims. When invoking the doctrine, we have in most cases simply affirmed the conviction on the unreviewed count, with or without noting the absence of "collateral consequences." Although our circuit has utilized the concurrent sentence doctrine for many years, we have not, in any opinion, closely examined what consequence should flow from it. A careful consideration of our practice causes us to conclude that, if we continue to use the concurrent sentence doctrine in the future, we should vacate rather than affirm the convictions on those counts which we decline to review.

I

We have described the concurrent sentence doctrine as follows:

[T]he appellate court, as a matter of discretion, may decline to review a conviction under one count if a conviction under

---

1. DeBright was tried with her husband, Ernesto Ayala-Zarate, and his brother, Hector Ayala-Zarate. Their appeals were consolidated for oral argument. We have disposed of the Ayala-Zarates appeals (Nos. 81–1646 and 81–1647) in a separate unpublished memorandum, also filed today.

2. The federal statutes involved are 21 U.S.C. §§ 963, 952(a), 960(a)(1), and 841(a)(1) (1976), and 18 U.S.C. § 2 (1976).

another count is affirmed and the sentence runs concurrently and no adverse collateral legal consequences for the appellant result from the additional conviction.

*United States v. Martin,* 599 F.2d 880, 887 (9th Cir.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 (1979). The doctrine was first applied in the Ninth Circuit almost 40 years ago. *See Maxfield v. United States,* 152 F.2d 593, 595 (9th Cir.), *cert. denied,* 327 U.S. 794, 66 S.Ct. 821, 90 L.Ed. 1021 (1946); *Haid v. United States,* 157 F.2d 630, 631 n. 2 (9th Cir.1946); *Danziger v. United States,* 161 F.2d 299, 301 (9th Cir.), *cert. denied,* 332 U.S. 769, 68 S.Ct. 80, 92 L.Ed. 354 (1947). It evolved for reasons of judicial economy, to enable an appellate court to avoid reviewing claims where disposition on the merits would have no practical effect on the term of a defendant's imprisonment.[3] Presumably because of the volume of cases on our docket, our circuit has continued to employ the doctrine. *See, e.g., Doan v. United States,* 202 F.2d 674, 680 (9th Cir.1953); *Robinson v. United States,* 262 F.2d 645, 648 (9th Cir.1959); *Sherwin v. United States,* 320 F.2d 137, 156 (9th Cir.), *cert. denied,* 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420 (1963); *Duran v. United States,* 413 F.2d 596, 605 (9th Cir.), *cert. denied,* 396 U.S. 917, 90 S.Ct. 239, 24 L.Ed.2d 917 (1969); *United States v. Martinez,* 488 F.2d 1088, 1090 (9th Cir.1973); *United States v. Valenzuela,* 596 F.2d 824, 829 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *United States v. Barker,* 675 F.2d 1055, 1059 (9th Cir.1982).

Ordinarily, when we have invoked the concurrent sentence doctrine, we have affirmed the conviction on the unreviewed counts. *See, e.g., United States v. Martin,* 599 F.2d at 887, 890. This practice has created a tension, however, between the desire to avoid the waste of judicial energies and the legitimate interest of a defendant in having a reviewing court thoroughly consider, before it affirms a conviction, whether the finding of guilt was lawful. It is this tension which has spawned the caveat that prevents application of the doctrine where a defendant may suffer "adverse collateral legal consequences," *id.* at 887.

Unfortunately, our decisions indicate that we have not always been mindful of this caveat. Indeed, we invoked the doctrine for 25 years before we made any mention of adverse collateral consequences. *See United States v. Moore,* 452 F.2d 576, 577 (9th Cir.1971) (per curiam) (first reported decision in which we mentioned adverse collateral consequences). Since then, on some occasions we have specifically found an absence of collateral consequences and then affirmed, *see, e.g., United States v. Martin,* 599 F.2d at 887, while on others we affirmed without even mentioning collateral consequences, *see, e.g., United States v. Ponticelli,* 622 F.2d 985, 992 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980); *United States v. Jabara,* 618 F.2d 1319, 1329 (9th Cir.), *cert. denied,* 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 (1980). *See* cases collected in *United States v. Barker,* 675 F.2d at 1061 n. 11 (Reinhardt, J., concurring).

The latter practice is particularly disturbing, for as the Supreme Court has observed, "most criminal convictions do in fact entail adverse collateral legal consequences." *Benton v. Maryland,* 395 U.S. 784, 790, 89 S.Ct. 2056, 2060, 23 L.Ed.2d 707 (1969) (quoting *Sibron v. New York,* 392 U.S. 40, 55, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968)). These consequences may be quite serious indeed, and may include a delay or denial of parole or exposure to state recidivist statutes.[4] Thus, if collateral consequences are indeed common and a finding of the absence of such consequences is a prerequisite to use of the doctrine, then it

---

**3.** For a discussion of the development of the concurrent sentence doctrine, see Note, *The Concurrent Sentence Doctrine: Sound Judicial Procedure or Illegitimate Shortcut?,* 1981 U.Ill. L.Rev. 723, 724–33, and Note, *The Concurrent Sentence Doctrine After Benton v. Maryland,* 7 U.C.L.A.—Alaska L.Rev. 282, 283–95 (1978).

**4.** A number of these consequences were canvassed by the Second Circuit in *United States v. Vargas,* 615 F.2d 952, 959–60 (1980). We doubt that even this list is exhaustive.

would seem that every defendant is entitled to careful review of all possible collateral consequences before any conviction is affirmed under the concurrent sentence doctrine. Ironically, though, such an approach defeats much of the economy to be gained from use of the doctrine. *See United States v. Vargas,* 615 F.2d 952, 959–60 (2d Cir.1980).[5]

The Second Circuit agrees that a defendant deserves rigorous consideration of all consequences that may accompany an affirmance under the concurrent sentence doctrine. As a result, that Circuit sees little practical utility in the doctrine, has virtually abandoned it, and reviews almost all convictions on the merits. *See United States v. Vargas,* 615 F.2d at 956 (citing *United States v. Ruffin,* 575 F.2d 346, 361 (2d Cir.1978) (invocation of the doctrine is now "the exception rather than the rule")). The Fourth and Seventh Circuits are in accord. *See Close v. United States,* 450 F.2d 152, 155 (4th Cir.1971), *cert. denied,* 405 U.S. 1068, 92 S.Ct. 1513, 31 L.Ed.2d 799 (1972); *United States v. Kilpatrick,* 458 F.2d 864, 867 (7th Cir.1972). Although the Second Circuit's approach has considerable merit, in view of the demands of our caseload we are not inclined to follow it at the present time. We would prefer first to test the practicality of an alternative approach—retain the doctrine, but vacate rather than affirm the unreviewed convictions.

Surprisingly, in the many years we have applied the concurrent sentence doctrine, we have never—with one exception—discussed the question whether affirmance or vacation is the appropriate disposition. Instead, once we concluded that the doctrine should be invoked, and made or failed to make the collateral consequences finding, we merely added, "we affirm." Equally surprisingly, in the one case in which we did discuss the issue of the appropriate disposition, we decided to vacate rather than affirm. *United States v. Fishbein,* 446 F.2d 1201, 1205 (9th Cir.1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 683, 30 L.Ed.2d 667 (1972).

In *Fishbein,* we adopted the vacation procedure now used by three other circuits. We did so by expressly "adopting the considerations expressed in *United States v. Hooper,* [432 F.2d 604 (D.C.Cir.1970)]." 446 F.2d at 1206. The District of Columbia Circuit had said in *Hooper* that it found no satisfactory explanation for summary affirmance, since each additional conviction imposes adverse consequences on a defendant, even where the sentences are concurrent. *Hooper,* 432 F.2d at 605–06 and n. 3. Rather than discard the concurrent sentence doctrine entirely and review each claim on the merits, however, the *Hooper* court vacated the concurrent convictions. Vacating, the court concluded, "does not impair any need of the government, avoids the possibility of adverse collateral consequences to defendant[s], and furthers the general interest of the administration of justice . . . ." *Id.* at 606 (footnote omitted). Recently, the Fifth and Eleventh Circuits also decided to adopt the *Hooper* approach. *United States v. Butera,* 677 F.2d 1376, 1386 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Cardona,* 650 F.2d 54, 58 (5th Cir.1981).

After *Fishbein,* we continued to apply the concurrent sentence doctrine, but—without mentioning *Fishbein* and without explanation—continued to affirm rather than vacate. *See, e.g., United States v. Ford,* 632 F.2d 1354, 1370 n. 16 (9th Cir.1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981); *United States v. Oropeza,* 564 F.2d 316, 322 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978); *United States v. Weislow,* 485 F.2d 560, 562 (9th Cir.1973), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974). Although we never retreated from our decision in *Fishbein* to adopt the *Hooper* considerations, 446 F.2d at 1206, we completely failed to utilize them. Now that, a decade later, the Fifth

---

**5.** In *Vargas,* the Second Circuit observed that its "specific analysis demonstrates how much uncertainty and judicial time and effort are involved in any review of the risk of collateral consequences, . . . judicial time and effort that reduce any 'convenience' flowing from the doctrine." 615 F.2d at 960.

and Eleventh Circuits have adopted the *Hooper* approach, we think the time has come for us to reaffirm our own *Fishbein* holding.

The *Hooper-Fishbein* approach has much to commend it. Vacating avoids the adverse collateral consequences that may unfairly attend the summary affirmance of an unreviewed conviction. While the concurrent sentence doctrine certainly facilitates the administration of the court's business, *Fishbein*, 446 F.2d at 1206, only vacating prevents "the disservice to our system of justice which results from courts saying, in effect: a conviction stands because we are too busy to decide whether the finding of guilt was lawful ...," *United States v. Barker*, 675 F.2d at 1061 (Reinhardt, J., concurring).

We also agree with the *Hooper-Fishbein* view that vacating does not impair any need of the government. Indeed, in the case before us, government counsel was asked at oral argument whether he could identify any such need. He remarked that he could not, "other than what effect [the concurrent conviction] might have on the parole commission." The government was unable, however, to explain why the four concurrent convictions would be viewed differently under the parole guidelines than the three, and we have discovered no such reason ourselves. *See Paroling Policy Guidelines*, 28 C.F.R. § 2.20 (1981).[6]

The government also suggested that we affirm under the doctrine simply because, having won a jury verdict below, it is entitled to the record of conviction. The *Hooper* court considered this argument and found it without force in circumstances like these. 432 F.2d at 606. As we stated in *Fishbein*,

the Government loses only the additional record of conviction of a [defendant] already convicted of offenses arising out of the same general transaction. Under these circumstances ... the interests of justice are better served if this Court turns its attention to the many real and pressing problems before it which cry for an early solution, rather than to engage in the vast labor necessary to solve ... academic problems.

446 F.2d at 1206.

■ We acknowledge that there will be cases in which the collateral consequences may be difficult to discern or define, but in which the government may still have some interest in retaining the record of conviction. Whether the government has such an interest may depend upon the seriousness and number of offenses, the relationship between them, and other factors. We believe, however, that whenever there is a sufficient government interest to warrant preserving the record of conviction, the defendant will have a correlative interest in having the conviction removed from his record. In other words, to the extent that a record of conviction may be of some benefit to the government, it is likely to be of some detriment to the defendant. Accordingly, where the retention of a record of conviction serves some legitimate purpose, the proper course is to review the conviction on the merits rather than to affirm it summarily.

There are several essential reasons for the existence of the federal judiciary, several primary tasks we perform. Foremost among these are the protection of individuals from arbitrary or unlawful government action, the assurance of fair, just and equal treatment under the laws, and the preservation of numerous other rights afforded by the Constitution, and particularly the Bill of Rights. *See United States v. Carolene Products Co.*, 304 U.S. 144, 152 n. 4, 58 S.Ct.

---

**6.** Although there is no apparent interest of the government to be served by affirming De-Bright's conviction on Count One, we might still review it on the merits were the questions she raises all plainly frivolous. *See Hooper*, 432 F.2d at 606. That is not the case. She argues primarily that she was entitled to an instruction that, if the jury found she had "conspired" only with a government agent, she could not be convicted under Count One. *See United States v. Martino*, 648 F.2d 367, 405 (5th Cir.1981). We have not previously decided that issue. To do so here might require a time-consuming review of the record and case law, without the possibility of any practical effect on DeBright's sentence. Her case is an appropriate one, therefore, for application of the concurrent sentence doctrine.

778, 783–84 n. 4, 82 L.Ed. 1234 (1938). The federal courts are beset with proposals designed to help us accomplish these tasks more "efficiently." *See generally* Posner, *Will the Federal Courts of Appeal Survive Until 1984? An Essay on Delegation and Specialization of the Judicial Function,* 56 S.Cal.L.Rev. 761 (1983). Affirming a conviction without considering the merits is yet another procedural device designed to improve our efficiency. We see no justification, however, for affirming convictions in this manner. We believe that we must employ methods that do less violence to the fundamental precepts that guide the federal courts. Where there is no legitimate governmental interest at stake, we can administer justice fairly and efficiently by vacating the conviction instead of affirming it; when such an interest exists, we can review the case on the merits. By following this procedure, we perform our functions in a proper manner and ensure that individual defendants will not stand unlawfully convicted.

We hold, therefore, that when we consider using the concurrent sentence doctrine in particular cases, we have only two proper choices—to invoke the doctrine and vacate the conviction, or reject its use and review the conviction on the merits.

DeBright faces six years' imprisonment whether her conviction under Count One is affirmed or vacated. We do not believe the government has demonstrated a legitimate interest in preserving the record of her conviction on that count. Review of the merits of DeBright's claim at this time would be an act of futility of the very sort that inspired the creation of the concurrent sentence doctrine. Her case, therefore, is an appropriate one for its application. In accordance with the approach we adopted in *Fishbein* and endorse again today, we vacate her conviction on Count One.

7. While the conviction is vacated, the jury verdict is not. *Hooper,* 432 F.2d at 606 n. 8. *See Butera,* 677 F.2d at 1386; *Cardona,* 650 F.2d at 58.

8. We may, however, consider an eighth amendment claim that a criminal sentence is disproportionate to the crime for which a defendant has been convicted. *Solem v. Helm,* —— U.S.

Our decision does not preclude the government from seeking reinstatement of the judgment in the district court should new circumstances arise. In the event the conviction is reinstated, it will be subject to full appellate review on the merits.[7]

Finally we would add that if for any reason the *Hooper-Fishbein* approach proves unsatisfactory in the long run, we should abandon the concurrent sentence doctrine entirely rather than return to the practice of affirming convictions regardless of their underlying lawfulness.

## II

DeBright raises one other contention, about which we need say only a brief word. She argues that—because this is her first offense, she is an elderly working mother and the trial below was traumatic—probation would have been a more appropriate sentence than the six-year concurrent prison terms she received. The government responds by noting that the district judge acted within his discretion in sentencing DeBright to six years, since the statutory maximum punishments exceeded 50 years.

Sentencing courts have broad discretion in imposing sentences. Appellate courts have "little, if any, power to review the appropriateness of legal sentences." *United States v. Doe,* 655 F.2d 920, 927 (9th Cir.1980).[8] Limited review is available, however, to determine whether discretion was actually exercised. *United States v. Lopez-Gonzales,* 688 F.2d 1275, 1276 (9th Cir.1982). While DeBright is correct that she was entitled to have the sentencing judge consider the peculiarities of her own circumstances, *id.* at 1277, there is every indication that Judge Marquez did just that.[9] We cannot conclude that the district court failed to exercise its discretion.

——, ——, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). DeBright raises no such claim here.

9. Judge Marquez originally set sentencing for September 14, 1981. In open court that day, after hearing statements from the defendants, he said:

The conviction under Count One is VACATED, with leave to the government to seek reinstatement in the district court if new circumstances arise. The sentences on the other counts are AFFIRMED.

I find this [a] very difficult case in which to pass sentence. On one hand because of Mrs. Bright [sic], it's a very unusual situation, her age, her family .... [L]ooking at the presentence reports again this morning and giving it some more thought, I just feel I'm not prepared to impose sentence today. I was prepared to impose a very severe sentence on all three of them, but I think that I, in all fairness to the defendants, I want to give it some more consideration.

Having said this, the judge continued the sentencing hearing for almost a month. Moreover, not only did the judge impose sentences that were far shorter than he might lawfully have given, but he also caused the sentences to run concurrently, rather than consecutively.